UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| EMMIT BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 07-139-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Emmit Burton ("Burton") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10 and 11] Through this action, Bruton seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he was not entitled to Supplemental Security Income benefits ("SSI"). The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Burton.

## I.    BACKGROUND

Burton filed an initial application for Supplemental Security Income benefits ("SSI") on January 21, 2003. That application was denied by an ALJ on February 12, 2004. His current application for SSI benefits was filed February 15, 2004, alleging disability beginning December

-1-

18, 2001. However, because the initial administrative proceeding was not reopened, the period of disability for purposes of the present action is considered to commence February 13, 2004.

After the current claim was denied initially and upon reconsideration, Burton requested a hearing before an Administrative Law Judge ("ALJ"). On March 16, 2006, a hearing was conducted before ALJ Charlie Paul Andrus. During this hearing, the ALJ heard testimony from Burton and Dwight McMillion, a vocational expert ("VE"). Thereafter, ALJ Andrus issued a decision denying benefits to Burton. [Transcript ("Tr."), pp. 12-19] The ALJ concluded in relevant part that Burton was able to perform his past work and that he retained the residual functional capacity to perform other medium work. [Tr., pp. 18-19] Brock's request for review was denied by the Appeals Council on June 6, 2007. [Tr., pp. 3-4]

At the time of the administrative hearing before ALJ Andrus, Brock was a 52 year-old individual with an eighth grade education. [Tr., p. 174-76] He alleged a disability beginning December 18, 2001, due to a number of problems including: low back pain, a sleeping disorder, leg and joint pain, and nerve problems. [Tr., p. 44] However, as noted above, as a result of the prior adverse decision issued February 13, 2004, Burton's alleged disability was not considered as having an onset date prior to February 13, 2004. [Tr., p. 12][1]

_____

[1] In connection with his earlier application, ALJ Don Paris made the following findings:

5.    The claimant has the following residual functional capacity: The claimant has a mild right limp with possible degenerative joint disease of the right hip; a sleep disorder; and is mildly obese; however, he retains the residual functional capacity to perform medium exertion work; occasionally lifting of 50 pounds; frequently 25 pounds; stand/walk 6 hours; sit 6 hours; no more than frequently kneeling, crouching or crawling; he should avoid unprotected heights, hazardous machinery and should not operate a motor vehicle or any motorized equipment.

6.    The claimant has past relevant work as a maintenance/janitor in retail; and as a roof

The ALJ found that Burton could perform his past work as a maintenance worker, taking into account the residual functional limitations that the ALJ found to exist. [Tr., p. 18] In addition, after review and evaluation of the medical evidence of record, and testimony at the hearing from Burton and the VE, the ALJ found that Burton had the residual functional capacity to perform other medium work that exists in the national and regional economies. [Tr., pp. 18-19] Thus, ALJ Andrus concluded that Burton was not disabled as defined by the Social Security Act and regulations. [Tr., p. 19]

## II.   LEGAL STANDARD

A claimant's Social Security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual

---

bolter in coal mining. He is unable to perform his past work as a coal miner/roof bolter, however, he is able to perform the light exertional unskilled work as a maintenance man/janitor in a retail store (20 CFR § 416.963).

function capacity ("RFC") and relevant past work to determine if he can do past work.  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (*quoting Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983).  While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record.  Instead, "substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552,

-4-

555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).   Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.   42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.   Credibility determinations are particularly within the province of the ALJ.  *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987).

## III.   DISCUSSION

Burton asserts that the ALJ erred by failing to explain why he did not adopt the limitations outlined in the report of a consulting psychologist, Jeanne Bennett. [See Tr., pp. 129 - 133.] More specifically, Burton contends that ALJ Andrus should have either adopted the following limitations or explained his reason for such failure:

> The person's capacity to understand instructions towards the performance of simple, repetitive tasks is adequate.  His ability to tolerate stress and pressure of day-to-day employment is limited.  The claimant's capacity to sustain attention and concentration towards the performance of simple, repetitive tasks is variable and negatively affected by varying levels of pain, anxiety and depression.  His capacity to interact appropriately with fellow workers and supervisors is adequate in a one-on-one or small group situation only.

-5-

[Tr., p. 133] Instead, Burton claims that it was erroneous to adopt different functional limitations that were incorporated into the hypothetical question posed to the VE. This argument is misplaced. While the ALJ did not mention the consulting examiners by name, he adequately explained the specific factors underlying the residual functional limitations that he found to be present.

ALJ Andrus presented the following hypothetical questions to VE McMillion:

Q.      Let's assume that we have an individual who can perform medium work, that is lifting no more than 50 pounds occasionally, 25 pounds frequently, but let's also assume that I find that the individual cannot work at heights or around open dangerous machinery, assume that the individual can understand, remember, and sustain attention with simple, even-paced tasks, can relate adequately in object-focused settings, and can adapt to routine task demands due to the moderate limitations found at exhibit B4F.[2]  I want you to assume that the individual cannot work operating motorized machinery.  Could such a person perform that claimant's past work?

A.      The job at Walmart, yes.

Q.      And the coal mining job would be eliminated?

A.      Yes, it would be.

Q.      Would the skills that you identified transfer with these limitations in, in place?

A.      No.

[Tr., pp. 186-87]

---

[2]  As the Claimant correctly notes, the reference to Exhibit B4F is an obvious typographical error.  The correct reference should be to Exhibit D-4F.  The moderate limitations identified in this exhibit include the ability to: (i) understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) maintain attention and concentration for extended periods; (iv) interact appropriately with the general public; and (v) respond appropriately to changes in the work setting.

As noted above, several of the limitations pertaining to lifting and carrying restrictions, working at heights and working around equipment and machinery were found to exist in connection with Burton's earlier application for benefits. [Tr., pp. 38] The remaining component of the hypothetical presented to the VE was taken from the report of H. Thompson Prout, Ph.D. Dr. Prout's Residual Functional Capacity Assessment is dated July 14, 2004, and appears at pages 134 to 137 of the administrative transcript.  With respect to Dr. Prout's analysis of Bennett's report, Dr. Prout notes that,

> The CE opinion, which does not appear to preclude all types of tasks, is given moderate weight in light of lack of history and prior determination.  It appears [claimant] would be able to:
>
> A+B [Understanding and Memory and Sustained Concentration and Persistence]  Understand, remember, and sustain attention with simple, even-paced tasks.
>
> C.  [Social Interaction] Relate adequately in object-focused settings.
>
> D. [Adaptation] Adept to routine, expected task demands.

By adopting this portion of Dr. Prout's Residual Functional Capacity Assessment, the ALJ obviously determined that Bennett's report should not be given full weight due to "lack of history" and the "prior determination" made in connection with Bennett's earlier, unsuccessful application for benefits.  Therefore, the question becomes whether the ALJ's opinion contains findings, based on substantial evidence, which supports this determination to limit the weight given to Bennett's report.  Having reviewed the entire record, the Court concludes that it does.

Burton does not contest the ALJ's findings concerning his impairments relating to his physical limitations.  Instead, his focus is upon the severity of his psychological impairments.

-7-

In addressing this impairment, the ALJ first considered whether Burton's affective and anxiety-related disorders met the listings contained in 20 C.F.R. § Part 404, Subpart P, Appendix 1. With respect to the A criteria of Listings 12.04 and 12.06, the ALJ noted that the overall record establishes that Burton has a disturbance of mood, accompanied by a depressive syndrome (major depressive disorder and generalized anxiety disorder). Next, in connection with the B criteria, the ALJ found mild limitations, based on testimony and other evidence of Burton's activities of daily living. And with respect to social functioning, the ALJ concluded that Burton was moderately impaired. Finally, the ALJ found that the claimant had moderate deficiencies of concentration, persistence and pace in connection with his ability to complete tasks in a work setting. [Tr., p. 15-16]

In making these determinations, ALJ Andrus considered evidence contained in the psychological evaluation and report of Jeanne Bennett as well as the Residual Functional Capacity Assessments performed by Dr. Prout and Larry Fredeudenger, a licensed psychologist. [See Tr., p. 15-16, citing Exhibits D-3F, D-4F and D-6F.] However, based on this information, the ALJ concluded that the claimant did not have an impairment or combination of impairments equal in severity to the criteria of any listed impairment. [Tr., p. 16]

Next, the ALJ considered the testimony of the Claimant as well as the other evidence of record in determining whether Burton had the residual functional capacity to perform his past work and/or other medium work that exists in the regional and national economies. After noting that Burton stopped working after being laid-off, the ALJ summarized the Claimant's complaints of back and shoulder pain. ALJ Andrus pointed out that Burton, "has not had physical therapy

-8-

and he does not use a back brace or TENS unit.  He takes medication that eases the pain without

side effects."  Further, in connection with Burton's complaints of low back and joint pain, the

ALJ observed that there "is no evidence of treatment after April 2004" and that the Claimant has

not shown"neurological or strength deficits." [Tr., p. 17]

The ALJ then considered and explained his rationale for limiting the weight given to the

psychological report of Jeanne Bennett.

> There is evidence of a history of medical treatment for depression (Exhibit D-1F).
> During a psychological evaluation conducted June 27, 2004, the claimant was
> found to have a depressed mood and good affect, with slowed information
> processes and psychomotor retardation (Exhibit D-3F).  The claimant showed
> normal attention, concentration, and memory (Id).  Mr. Burton was diagnosed
> with a generalized anxiety disorder and major depressive disorder, and his GAF
> score was placed at 45 (Id).
>
> In determining the claimant's residual functional capacity, I have considered and
> made reductions based upon the claimant's demeanor as a witness.  The
> undersigned was able to observe the claimant while he testified, his demeanor, the
> way he answered questions and all of the other factors that go into assessing a
> witness' credibility.  Considering these factors, I find his credibility as a witness
> to be poor and his demeanor during the hearing consistent with the limitation
> established in his residual functional capacity.[3]  Burton admits that he stopped
> work because was laid off, not because of his impairments.  The record also
> shows the claimant has sought little treatment for his complaints, with the last
> conservative treatment evidenced in April 2004.  Were the claimant's pain as
> severe as he alleges, it is reasonable to assume he would have sought more
> treatment than indicated by the record.  Overall, the claimant's testimony
> appeared vague and his allegations exaggerated.

[Tr., p. 17] Thus, contrary to Claimant's assertions, the ALJ explained why he did not accept

Bennett's conclusions.

---

[3]  The RFC includes the limitations noted in the Residual Functional Capacity Assessment of Dr. Prout
(Exhibit D-4F).

In light of the earlier administrative decision, it also bears repeating that the ALJ was not writing on a clean slate.  Based on the evidence of record, ALJ Paris concluded on February 12, 2004, that Burton was not suffering from any medically determined mental impairment.[4] [Tr., p. 34] And while ALJ Andrus did find some degree of mental impairment, his decision is supported by the earlier administrative decision as well as the other evidence cited in his opinion.

> The state agency medical consultants found no severe physical impairment; however, Mr. Burton was found limited to a range of medium work in a previous Administrative Law Judge Decision issued February 12, 2004 (Exhibit D-1A). As the medical evidence does not establish significant improvement or worsening with regard to the claimant's impairments since the last Decision was issued, the undersigned has given the previously adjudicated residual functional capacity greater weight (*Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir., 1997) and AR 9804(6)).  The undersigned finds the assessments provided by the state agency psychological consultants consistent with the overall medical record (Exhibits D-4F and D-6F).

[Tr., p. 17-18]

Thus, while the ALJ believed the reports of Prout and Fredeuenger were consistent with the medical records and his own observations of Burton, he was unable to draw this conclusion

---

[4]  With respect to Burton's alleged psychological impairments, ALJ Paris made the following determination after reviewing the relevant evidence,

> Stuart A. Cooke, Ph.D., an agency consultative psychologist, evaluated the claimant in April 2003.  Dr. Cooke noted that the claimant last worked in 2001 at Wal-Mart in maintenance. He was laid off after Christmas due to a cut back.  He worked almost one year.  He has never been treated by a psychologist or psychiatrist.  He has never been placed in a psychiatric hospital.  He is not on any medications.  He has eight years of education.  Dr. Cooke reported no Axis I or II diagnosis (Exhibit C-5F).  Two state agency non-examining psychologists and medical record reviewers reported no medically determinable mental impairment (Exhibits C-8F and C-9F). *The claimant testified that his problems are physical in nature and not mental.*  He has never been treated by a psychiatrist or psychologist.

> In light of the foregoing, . . . . I find that there is no medically determinable mental impairment.

(Emphasis added.) [Tr., pp. 33-34]

-10-

in connection with the report of Jeanne Bennett.  Therefore, the ALJ's decision that Bennett's report should not be accepted in its entirety is supported by substantial evidence.

Next, although the VE testified that the hypothetical person with Burton's limitations could perform his past work, the ALJ proceeded to question him concerning other relevant work at a medium exertional level.

> Q.   To these limitations, I want to add vocational factors assuming our hypothetical person is of the claimant's age, education, and work background.  In your opinion, would there be a significant number of jobs in the regional or national economy such a person could perform?
>
> A.   Yes, Your Honor.
>
> Q.   And what percentage of the medium, light, and sedentary unskilled jobs would such an individual do?
>
> A.   At the medium level, approximately 40%.  At light approximately 50%. And sedentary approximately 30%.

[Tr., p. 187] This testimony, taken with the ALJ's findings concerning Burton's RFC, support the determination that other medium work exists in the national and regional economies that the Claimant was capable of performing.

In summary, the ALJ's decision that Burton retained the residual functional capacity to perform medium work, subject to certain identified mental limitations, is supported by substantial evidence in the record.  This includes the objective findings of Dr. Koenigsmark, an examining physician [Tr., p. 126], the ALJ's personal observations relating to the Burton's credibility, and consideration of the prior ALJ's determination made in February 2004.  His determination that Burton's mental impairment would present no more than mild to moderate limitations is also supported by the reports of the state agency psychologists [Tr., pp. 134-176].

-11-

It is equally clear that the ALJ properly discounted Bennett's report (and GAF score of 45) based on his observations, factual determinations regarding Burton's credibility, and conflicting evidence which was accepted by the ALJ. While the ALJ's finding that the Claimant was able to perform his past work as a maintenance worker is supported by substantial evidence, his additional finding at step five of the sequential process was also supported by the testimony of VE McMillion.

## IV.    CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** that as follows:

1.      The Claimant's Motion for Summary Judgment [Record No. 10] is **DENIED**;

2.      The Commissioner's Motion for Summary Judgment [Record No. 11] is **GRANTED**; and

3.      The administrative decision of the Commissioner will be **AFFIRMED** by separate Judgment entered this date.

This 19th day of October, 2007.



Signed By:

*Danny C. Reeves*

United States District Judge